J-S41008-18

2018 PA Super 221

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIF THOMAS | : | |
| | : | |
| Appellant | : | No. 1388 EDA 2017 |

Appeal from the Judgment of Sentence March 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004334-2016

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED AUGUST 03, 2018**

Appellant, Khalif Thomas, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of one count each of murder in the first degree, carrying a firearm without a license, and possessing an instrument of crime.[1]  Sentenced to a mandatory sentence of life in prison on the murder charge, with an aggregate sentence of 4 ½ to 12 years' incarceration on the remaining charges, Appellant raises challenges to the admission of evidence, to the court's application of Pa.R.E. 106 during trial, and to the sufficiency and the weight of the evidence.  We affirm.

The trial court's Pa.R.A.P. 1925(a) opinion sets forth the pertinent facts of the case, as follows:

> At trial, the Commonwealth presented the testimony of
> Philadelphia Police Officers Christopher Noga, Crain Perry, Ann

___

[1] 18 Pa.C.S. §§ 2502, 6106, and 907(a), respectively.

___

*   Former Justice specially assigned to the Superior Court.

Brown, Darnell Jessie, Kevin Palmer, Robert Stott, Vincent Luu, and Maurice Smith, Philadelphia Police Detectives Darryl Pearson and Laura Hammond, Philadelphia Police Sergeant Francis Kelly, Philadelphia Deputy Medical Examiner Dr. Albert Chu, and Dianna Garfield, Shatyrah Garfield, Karee Freeman, Eric McDowell, and Khalil Hall. Defendant [hereinafter "Appellant"] presented no testimony, but offered into evidence a letter written by Karee Freeman. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

During the evening hours of December 30, 2015, Appellant, the victim, Naeem Garfield, and a few other men were playing dice on the corner of Salford and Market Streets in Philadelphia. N.T. 3/21/17 at 207. Eventually, the men moved their game a short distance away to Redfield Street. *Id*; N.T. 3/22/17 at 67. During the game, some players became angry that Garfield was cheating and winning. N.T. 3/21/17 at 135; N.T. 3/22/17 at 40. At one point, a player, Eric Flowers, angrily walked away from the game, and Appellant went over to him and said, "It's cool, man. It's cool. We gonna handle it man." N.T. 3/21/17 at 135, 147.

Sometime after, while Garfield was bending over to roll the dice, Appellant fired a shot at him from behind, causing him to fall to the ground. *Id*. at 207-208; N.T. 3/22/17 at 70, 77-78. Appellant then shot Garfield two more times in his face. N.T. 3/21/17 at 208. Multiple witnesses were on the scene at the time of the shooting. They included Karee Freeman, who was a participant in the dice game and just down the street, and Eric McDowell, who was across the street, approximately a half-block away. N.T. 3/21/17 at 207-208; N.T. 3/22/17 at 66, 102.

At the time of the shooting, Philadelphia Police Officers were responding to a burglary call on the 100-block of Redfield Street, when they heard gunshots coming from the south on Redfield. N.T. 3/21/17 at 74. Officers proceeded to the scene and found Garfield [lying] on his back in front of 43 North Redfield, suffering from an apparent gunshot wound to the head. *Id*. Garfield was in fact shot three times: twice in the head and once in the back of the neck. N.T. 3/22/17 at 11-13. Philadelphia Police Officers transported him to Presbyterian Hospital in Philadelphia, where he was later pronounced dead. N.T. 3/21/17 at 67, 75.

Trial Court Opinion, filed 10/20/17, at 2-4.

Following Appellant's conviction, sentencing, and the denial of his post-sentence motion, he filed this timely notice of appeal.[2]  The trial court directed Appellant to file a concise statement of matters complained of on appeal, and Appellant complied.  In turn, the trial court has supplied us with its Pa.R.A.P. 1925(a) opinion.

In Appellant's brief submitted to this Court, he presents the following questions for our consideration:

> **I.    [DID] THE COURT ERR[] IN ADMITTING EVIDENCE THAT HAD A PREJUDICIAL EFFECT THAT FAR OUTWEIGHED ANY PROBATIVE VALUE[?]**
>
> **II.   [DID] THE COURT ABUSE[] ITS DISCRETION APPLYING THE RULE OF COMPLETENESS[?]**
>
> **III.  [WAS] THE VERDICT . . . AGAINST THE SUFFICIENCY AND/OR WEIGHT OF THE EVIDENCE[?]**

---

[2] The docket sheet reflects that Appellant filed the notice of appeal on April 24, 2017, while his post-sentence motion was still pending before the trial court.  On July 19, 2017, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory because the post-sentence motion was still pending.  On July 24, 2017, the trial court denied the post-sentence motion.  On July 26, 2017, counsel filed a response to the rule to show cause.  There is no indication on the trial court docket that Appellant filed a subsequent notice of appeal after the post-sentence motion was denied.

The Pennsylvania Rules of Appellate Procedure provide that "a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.  Pa.R.A.P. 905(a)(5).  Accordingly, we deem Appellant's notice of appeal timely filed on the date the trial court denied the post-sentence motion.

Appellant's brief, at 1.

In Appellant's first issue, he charges error with the court's admission of evidence, over defense objection, that Karee Freeman and he were incarcerated in the same jail two months before trial. Allowing such evidence "created an inference that Appellant had a criminal background making him appear more likely than not the person responsible for Mr. Garfield's murder because he was incarcerated[,]" Appellant maintains. Appellant's brief at 3. Also unfairly prejudicial, Appellant contends, was the question put to Mr. Freeman about whether "prisoners look favorably on a fellow prisoner like you testifying for the Commonwealth?" N.T. 3/21/17, at 244-47.

The Commonwealth sought to admit this evidence in response to Freeman's written recantation of his earlier videotaped statement in which he had described, in detail, how he witnessed Appellant shoot and kill Garfield. Specifically, the Commonwealth argued the timing of Freeman's letter of recantation, which he made within one month of his placement in the same institution as Appellant, supported the inference that the recantation was the product of Appellant's intimidation of a key Commonwealth witness. As such, the Commonwealth claimed the evidence was relevant both to show Appellant's consciousness of guilt and to explain the reason for Freeman's inconsistent statements, and the trial court agreed.

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact

- 4 -

at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

***Commonwealth v. Levanduski***, 907 A.2d 3, 13–14 (Pa. Super. 2006). "In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." ***Reott v. Asia Trend, Inc.***, 7 A.3d 830, 839 (Pa.Super. 2010) (internal quotations and citations omitted). "A party suffers prejudice when the trial court's error could have affected the verdict." ***Commonwealth v. Yockey***, 158 A.3d 1246, 1254 (Pa.Super. 2017) (citation omitted).

Our courts have "long recognized that any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." ***Commonwealth v. Rega***, 933 A.2d 997, 1009 (Pa. 2007). So, too, have we permitted the Commonwealth to engage in a line of questioning designed to reveal that a witness changed his testimony for fear of the consequences of testifying truthfully. ***See, e.g., Commonwealth v. Collins***, 702 A.2d 540, 544 (Pa. 1997) (recognizing well-established precedent that third-party threats are admissible to explain a witness's prior inconsistent statement).

Revealing to the jury that Freeman disavowed his accusation of Appellant less than one month after he was housed in the same prison as Appellant was consistent with controlling jurisprudence deeming this kind of evidence admissible for the limited purposes identified above. Moreover, the trial court explained to the jury that Appellant was not incarcerated for a prior

offense at the time in question but was in pretrial incarceration on the present charges. To that end, the court cautioned the jury that it could not

> conclude that [Appellant] is a bad person or a person of bad character because he was incarcerated. As you know, after people get arrested, they are frequently incarcerated before trial. You folks know. So you are not to draw any conclusions about that fact, whatsoever, all right? [Appellant's incarceration is] [o]nly admissible for the two purposes I told you. To the extent that it explains this witness' behavior, if you find it happened and if you find it helpful. I'm not expressing any opinion on whether or not it's true, okay? Or if you find that it shows a consciousness of guilt on the part of the defendant. If you don't, that will be entirely up to you as to what actually happened; okay. That's your decision.

N.T. 3/21/17 at 219.

Given this record, no abuse of discretion attended either admitting evidence of Appellant's pretrial detention with Freeman or asking Freeman whether he believed his cooperation with the Commonwealth would place him at risk with fellow inmates. Both evidentiary offerings were relevant for the limited purposes identified by the trial court in its instruction to the jury, namely, explaining a possible reason for Freeman's recantation and revealing Appellant's consciousness of guilt, provided the jury believed Appellant did, in fact, intimidate Freeman. Furthermore, the jury instruction, itself, cured any potentially unfair prejudice stemming from the evidence by explaining Appellant was not incarcerated for other crimes but was detained pending trial on the charges filed in the present case. For these reasons, we reject Appellant's first issue as devoid of merit.

In Appellant's second issue, he argues that the trial court abused its discretion in applying Pennsylvania Rule of Evidence 106,[3] known as the "Rule of Completeness," during defense counsel's re-cross examination of eyewitness Eric McDowell.  Specifically, counsel read to McDowell a portion of his preliminary hearing testimony—where McDowell had claimed he was running away from the scene and did not witness the shooting as it happened—and asked McDowell to confirm the accuracy of his prior testimony, which McDowell did.  N.T., 3/22/17 (criminal trial) at 121-123.

At that moment, the court addressed the prosecutor and advised her that she may ask defense counsel to read any other portion of McDowell's preliminary hearing in the interest of completeness, as the prosecutor would

_____

[3] Pennsylvania Rule of Evidence 106 provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

Pa.R.E. 106.  The purpose of the rule is to

> give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context.  This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced.  The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.

Pa.R.E. 106, comment.

not have the opportunity to conduct more questioning after defense counsel completed his re-cross examination. N.T. at 123-24. The prosecutor requested that defense counsel "read to the next page, page 14[,]" to which defense counsel asked of the court "Are you stopping my cross-examination?" N.T. at 124.

The court responded,

No. Under the rule of completeness, I'm allowing her to direct you to cover more than what you just did. Keep reading the questions and answers. That's what I'm doing. . . . It's a continuation. She's about to have you continue reading. Within fairness it should be read. I'm allowing her to do that."

*Id*. "And you want me to do it?" defense counsel asked, to which the court replied, "You can do it, yes." "Okay[,]" defense counsel replied. N.T. at 124-125.

Defense counsel read the next page of the preliminary hearing notes of testimony, where McDowell testified he did not see the shooting happen but was present that day at the time of the shooting. "I got up out of there . . . when it was about to go down[,]" McDowell explained. N.T. at 125-26 (quoting preliminary hearing testimony). McDowell testified he saw Appellant holding the gun toward the shooting victim "and that's when I got up out of there." N.T. at 126 (quoting preliminary hearing testimony). McDowell then heard "like three, four" gunshots as he was running away. N.T. at 126. (quoting preliminary hearing testimony).

Appellant now objects, for the first time, that there was no misleading impression created by defense counsel's use of McDowell's preliminary hearing testimony that justified the trial court's use of Rule 106 as a corrective measure. In order to preserve an evidentiary objection for purposes of appellate review, a party must interpose a timely and specific objection in the trial court. "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." *Commonwealth v. Cousar*, 928 A.2d 1025, 1041 (Pa. 2007), quoting *Commonwealth v. Boden*, 159 A.2d 894, 900 (Pa. 1960). Because Appellant failed to lodge a timely and specific objection on the basis that Rule 106 permits only correction of a misleading use of a writing or recorded statement, his argument his waived on appeal.

In his final issue, Appellant argues that his verdict was against either the sufficiency of the evidence or the weight of the evidence, given the lack of evidence identifying Appellant as the person who shot Naeem Garfield. We first address Appellant's sufficiency of the evidence claim, for which our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa.Super. 2011) (citing *Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa.Super. 2010)). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." (*Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 185 (1993)). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa.Super. 2010) (quoting *Commonwealth v. Badman*, 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990)).

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014).

From our review of Appellant's sufficiency argument, we see he ignores our standard of review by examining evidence involving prior inconsistent statements in the light most favorable to him. For example, Appellant argues that Eric McDowell testified he saw neither the shooting itself nor the shooter, had no first-hand knowledge of the events surrounding the shooting, and could not definitively place Appellant at the scene of the crime. Appellant's brief, at 6-7. Yet, the record shows McDowell testified he began to run when he saw Appellant aim the gun high at Garfield, and he heard gunshots just

- 10 -

seconds later. N.T., 3/22/17, at 69-70. McDowell also testified Appellant later admitted to him that he shot Garfield because Garfield was winning all the money at the dice game. N.T. at 77-78.

Similarly, Appellant contends that Karee Freeman took the stand and recanted his earlier accusation of Appellant as Mr. Garfield's shooter. However, the Commonwealth introduced the video interview of Freeman taken during the investigation where Freeman described in detail how he heard a gunshot at the dice game, turned to see Garfield fall to the ground, and watched Appellant shoot Garfield two times in the face. N.T., 3/21/17, at 207-210. The medical examiner later testified that Garfield was shot twice in the face and once in the neck, with two of the shots proving immediately fatal.

To convict a defendant of first-degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill. *See* 18 Pa.C.S.A. § 2502(a); *Commonwealth v. Brown*, 987 A.2d 699, 705 (Pa. 2009); *Commonwealth v. Sherwood,* 982 A.2d 483, 491–492 (Pa. 2009) (citations omitted). The fact-finder "may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body." *Brown, supra,* quoting *Commonwealth v. Blakeney,* 946 A.2d 645, 651 (Pa. 2008). Malice, as well, may be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Gardner,* 416 A.2d 1007, 1008 (Pa. 1980).

Here, the Commonwealth provided sufficient evidence, through the testimonies of eyewitnesses and the medical examiner, that Appellant intentionally and fatally shot Mr. Garfield. To the extent Appellant argues such testimonies were inconsistent and unreliable, he conflates his sufficiency argument with his weight claim. It is well-settled that credibility determinations "go to the weight, not the sufficiency of the evidence." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa.Super. 2012).

Turning, then, to Appellant's weight of the evidence claim,[4] we note the following:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence

_____

[4] Appellant preserved his weight claim by raising it in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

- 12 -

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013) (internal citations and quotation marks omitted) (emphasis in original).

Appellant's weight of the evidence argument, in its entirety, states that his verdict shocks the conscience where "no witnesses identified [him] as the person responsible for the murder of Mr. Garfield." Appellant's brief, at 7-8. As discussed above, however, two eyewitnesses gave sworn statements identifying Appellant as the man who murdered Mr. Garfield, and the jury found these incriminating statements credible despite zealous cross-examination by the defense. Hence, we discern no abuse of discretion in the trial court's denial of Appellant's post-trial weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/18

- 13 -