**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMETRIS GRAHAM | : | |
| | : | |
| Appellant | : | No. 1742 EDA 2018 |

Appeal from the Judgment of Sentence Entered February 14, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005703-2017

BEFORE: PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 11, 2019**

Appellant Dametris Graham appeals from the judgment of sentence imposed following his conviction for retail theft at a bench trial.[1] Appellant claims the Commonwealth presented insufficient evidence to support the conviction, and the court illegally included restitution as part of his sentence. We affirm.

The trial court summarized the relevant facts and procedural history of this appeal as follows:

> The Commonwealth presented testimony from Mr. Stephen Trombetti . . . . Trombetti testified that he works for Acme Markets as a Loss Prevention Officer, covering multiple stores including the 24-hour Acme Market, located at 801 North Lansdowne Avenue, in Upper Darby, PA. As a Loss Prevention Officer, his duties include investigating external and internal theft.

---

[1] 18 Pa.C.S. § 3929(a)(1).

On August 9, 2017, between 8:00 a.m. and 9:00 a.m., Trombetti was called to the Acme Market located at 801 North Lansdowne Avenue in order to investigate an overnight theft. When he responded to Acme, Trombetti viewed the video surveillance, which covers most of the store. Trombetti testified that Acme has two separate entrances consisting of an entrance door and exit door. Although Acme is open twenty-four hours, it is their practice to lock one entrance/exit to the store around 9:00 p.m. This leaves customers to enter and exit on only one side of the building.

While watching the surveillance video, Trombetti observed a black male with a shopping cart going down aisles of the store that contain Dove products and Tide products; the male on the video was loading his cart with Dove soaps and Tide Pods. From the angle of the surveillance video, Trombetti could only see the male's head. From the video surveillance, Trombetti could tell that after the male walked down the aisles, the shelves were bare which alerted him as to what items were specifically targeted because it is not common practice for the shelves to be bare; rather, the shelves are usually always full as part of the re-stocking process.

Trombetti also viewed the video surveillance of the exit and entrances, both the accessible side and the previously locked side. Trombetti saw the same male approach the side that was locked to the public; the male proceeded to unlock the door from the inside of the store and walk out into the vestibule, where he then pried open the sliding doors that lead from the vestibule to the outside, looked around for a couple of minutes, and then completely exited the store with his cart full of unbagged merchandise. Trombetti told the [c]ourt that if the merchandise had gone through a register line, as it should have, it would have certainly been bagged.

At trial, the Commonwealth marked the video surveillance as C-1. While the video was played, Trombetti pointed out to the [c]ourt what was occurring on the video; the timeframe was stamped as 3:09 a.m. Trombetti pointed out where the male can be seen physically opening the locked door (which is typically automatic) leading into the vestibule and then prying open the door from the vestibule to the outside of the store and pushing his full cart of unbagged Dove and Tide items through the doors and into the outside. The man then comes back and physically closes the doors that he pried open.

As part of his investigation, Trombetti also reviewed the register logs and found that nothing of that amount or value was rung up at any of the registers during that time of the early morning. Based upon his eleven years of experience at Acme, Trombetti told the [c]ourt that it would not have been possible within the timeframe that the male was in the store to enter and have all of the items in his cart rung up at register. In addition, based upon the empty shelves and his years of experience, Trombetti estimated that the value of the stolen merchandise was approximately $1,500.00.

Trombetti testified that the man on the video was not an employee of Acme and did not have permission from anyone at Acme to enter the store and remove the items. Based upon his investigation, Trombetti called the police, who later informed him that they [identified] the subject as Appellant.

The attorney for the Commonwealth and attorney for Appellant agreed as follows:

If called to testify, Officer Redheffer from the Upper Darby Police Department would have testified that he responded, gathered the information and made an initial report. Detective Lydon of the Upper Darby Police Department was the initial investigator and . . . they put out still frames of the video and tried to gather information. Information came in from a separate incident where a license plate was recorded. That license plate belonged to an individual female and it gave an address. The address also had a known occupant, Appellant. Detective Lydon then took a photo, had a photo of Appellant, and compared it to the video and was able to [identify] Appellant as the man in the surveillance video. If called to testify, he would state on record that this is how he made the [identification] of Appellant from this incident.

Trial Ct. Op., 7/30/18, at 1-4 (record citations omitted).

On October 18, 2017, the Commonwealth filed a criminal information, charging Appellant with retail theft. The court conducted a bench trial on

January 10, 2018, finding Appellant guilty of felony retail theft.[2]  On February 14, 2018, the court sentenced Appellant to one to two years' imprisonment and restitution in the amount of $1,500.

On February 23, 2018, Appellant timely filed a post-sentence motion challenging the weight and sufficiency of the evidence.  Following a hearing, the court denied Appellant's post-sentence motion on May 1, 2018.

On May 30, 2018, Appellant timely filed a notice of appeal.  On June 4, 2018, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, which Appellant timely filed.  The trial court filed a responsive Pa.R.A.P. 1925(a) opinion, concluding Appellant was not entitled to relief.

Appellant now presents two issues for our review:

1) Whether the evidence is legally insufficient to sustain the conviction for retail theft since Appellant was not identified as the offender beyond a reasonable doubt, where there was no in-court identification and video of the purported incident was not admitted into evidence[.]

2) Whether the restitution order is illegal and must be vacated since the amount imposed is unsupported by the record[.]

Appellant's Brief at 5.

In his first issue, Appellant contends that the Commonwealth's lone witness, Trombetti, was not present at the supermarket at the time of the

_____

[2] Retail theft is graded as a third degree felony when it is a third or subsequent offense or the amount involved exceeds $1,000.  18 Pa.C.S. § 3929(b)(1)(iv), (v).  Here, Appellant was convicted of retail theft on three prior occasions, and the amount at issue for the instant offense exceeded $1,000.  Criminal Information, 10/18/17, at 1.

theft, but viewed the incident on the surveillance video after it occurred. ***Id.*** at 12. Appellant maintains Trombetti could not identify the individual depicted in the surveillance video, and his testimony failed to establish that Appellant committed the offense. ***Id.*** Appellant acknowledges that the trial court also viewed the surveillance video and relied on it to identify Appellant as the perpetrator. ***Id.*** Nevertheless, Appellant asserts that the court's conclusion that Appellant was the same man in the video was legally insufficient. ***Id.*** at 13. Further, Appellant claims that the court should not have relied on the video, because no party moved for its admission into evidence. ***Id.***

Appellant insists that his trial counsel's defense strategy was to argue that Appellant was not the same individual depicted in the video. ***Id.*** at 14. Regarding the parties' stipulation about testimony from Detective Lydon, Appellant emphasizes that the detective would have explained how he compared a photograph to the surveillance video to conclude that Appellant was a suspect. ***Id.*** Because the parties merely intended for the stipulation to show how the police established Appellant as a suspect, Appellant argues that the court should not have utilized it as a means to defeat Appellant's misidentification defense. ***Id.***

We apply the following standard when reviewing a sufficiency claim:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (brackets and citation omitted). "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Thomas*, 194 A.3d 159, 166 (Pa. Super. 2018) (citation omitted); *see also Commonwealth v. Lovette*, 450 A.2d 975 (Pa. 1982) (explaining that a sufficiency claim will not be assessed on a diminished record, but rather on the evidence actually presented to the finder of fact).

A person is guilty of retail theft if he "takes possession of . . . any merchandise . . . offered for sale by any store . . . with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof. . . ." 18 Pa.C.S. § 3929(a)(1).

Instantly, the Commonwealth presented Trombetti, who testified about his investigation into the theft at the supermarket. As part of his investigation, Trombetti reviewed surveillance video, including footage of Appellant loading a shopping cart with soap and laundry detergent. The video showed the individual identified as Appellant forcing open a locked door and departing the

supermarket with a cart full of merchandise that was not paid for at any of the cashiers' counters.

During Trombetti's testimony, the Commonwealth played the surveillance video. The parties also stipulated that, if called to testify, Upper Darby Police would explain how they utilized the video to identify Appellant as a suspect. Significantly, the court viewed the video and determined that Appellant committed the theft based on Appellant's "facial features, height and mannerisms." Trial Ct. Op. at 4. Therefore, it was within the court's province as fact-finder to draw its own conclusions after viewing the surveillance video, and this evidence alone could establish Appellant's identity as the perpetrator. *See Palmer*, 192 A.3d at 89; *see also Commonwealth v. Childs*, 63 A.3d 323 (Pa. Super. 2013) (reiterating that video surveillance footage was sufficient evidence for the fact finder to identify defendant).

To the extent that Appellant complains that the parties did not move for admission of the video into evidence, the prosecutor marked the compact disc containing the video footage as exhibit C-1. The prosecutor indicated that defense counsel "agrees that this video is the evidence that we would bring in today." N.T., 1/10/18, at 10. Appellant's trial counsel confirmed that he had received a copy of the video and raised no objection before the prosecutor played the video. Although the court did not formally admit the video into evidence, the parties regarded the video as admissible for purposes of trial. Under these circumstances, we deem the video part of the entire record that we must evaluate. *See Thomas,* 194 A.3d at 166. Based upon the foregoing,

- 7 -

we conclude that sufficient evidence supported Appellant's conviction for retail theft.

In his second issue, Appellant argues that the restitution amount in his case is excessive, speculative, unsupported by the record, and illegal, because Trombetti provided a mere estimate regarding the value of the items removed from the supermarket. Appellant's Brief at 16. Appellant emphasizes that the Commonwealth did not submit logs to establish the prices of the stolen goods. *Id.* Further, Appellant claims that the quantities of stolen goods remained unknown, because the supermarket conducted inventory on a sporadic basis. *Id.* Absent more, Appellant insists there was no way for the court to determine whether $1,500 worth of product could even fit into a single shopping cart.[3] *Id.*

Initially, we note that:

> [i]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

---

[3] Appellant did not object to the amount of restitution at the sentencing hearing or in his post-sentence motion. Nevertheless, Appellant's claim that the restitution order is unsupported by the record challenges the legality of his sentence and cannot be waived. *Commonwealth v. Stradley*, 50 A.3d 769, 772 (Pa. Super. 2012).

*Commonwealth v. Holmes*, 155 A.3d 69, 78 (Pa. Super. 2017) (*en banc*) (citation omitted).

"It is the Commonwealth's burden of proving its entitlement to restitution." *Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010) (citation omitted).

> When fashioning an order of restitution, the . . . court must ensure that the record contains the factual basis for the appropriate amount of restitution. The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. The amount of the restitution award may not be excessive or speculative. It is well-settled that [a]lthough it is mandatory under section 1106(c) to award full restitution, it is still necessary that the amount of the full restitution be determined under the adversarial system with considerations of due process.

*Id.* (citations and quotation marks omitted).

Instantly, Trombetti testified that Appellant loaded his shopping cart with Dove soap and Tide Pods. The surveillance video revealed "the shelves were bare" where these items would normally be found. N.T. at 9. Trombetti confirmed that the shelves are usually full during business hours. Based on his eleven years of experience working for Acme, and the amount of product that would normally occupy the shelves, Trombetti estimated that Appellant removed $1,500 worth of product from the supermarket. At sentencing, the prosecutor requested $1,500 in restitution, which the court included in its sentencing order. Because Trombetti's trial testimony provided a sufficient factual basis for the restitution amount, Appellant is not entitled to relief on this claim. *See Atanasio,* 997 A.2d at 1183.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/19