**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEJVAN SCOTT | : | |
| | : | |
| Appellant | : | No. 1384 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 8, 2018
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000092-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:        **FILED: MARCH 27, 2019**

Dejvan Scott (Scott) appeals from the judgment of sentence imposed by the Court of Common Pleas of Huntingdon County (trial court) following his bench conviction of two counts of Terroristic Threats and one count of Harassment.[1]  We affirm.

We take the following relevant facts and procedural history from our independent review of the certified record.  Scott is an inmate at State Correctional Institution (SCI) Huntingdon.  In October 2016, he was housed temporarily in administrative custody, a unit separate from the general prison population, because of his claims regarding certain gang members.  After an investigation, the security office recommended his release back into the

_____

[1] 18 Pa.C.S. §§ 2706(a)(1) and 2709(a)(4), respectively.

_____

* Retired Senior Judge assigned to the Superior Court.

general population because his claims could not be substantiated. Scott then completed two request slips containing threatening language directed toward SCI staff and sent them to the superintendent of the institution.[2]

Scott proceeded to a bench trial in January 2018. The trial court found him guilty of the above-mentioned offenses and sentenced him to an aggregate term of not less than one nor more than two years of incarceration.

_____

[2] The request slips read:

> I'am [sic] not playing. I told security about my problems with The Bloods, a gang. I told them it's a life and death situation. I told them its either me or them, "the Bloods" But somebody is going to get hurt. Yeah I owe them money, so I saw PRC. They said that they was going to release me to regular population, so now I'am [sic] telling you if they let me out I'am [sic] going to seriously hurt some Body the same night they release me. and I'm thinking about doing something to one of the nurse's and a sexual way, I will do anything to safe my Life from Being out there in population, I don't want to Hurt no nurse's or inmate's.

(Commonwealth's Exhibit 1).

> We got up until thirty days to Figure this out so you telling me your going to jeopardize staff safety? For that matter why did you write up a misconduct? All I'm saying is you could consider Helping the situation instead of taking it as a joke, my last institution didn't take my threats serious, and look what happened!! I sexually assaulted staff. I'm just looking out for yall [sic] Benefits!!! Take my last statements I made previous to this request serious. Please don't take me as a joke? You might want to reconsider your options: Don't put harm in harm ways!! Please don't jeopardize anyone's career think before you react,
>                                        Sincerely, Mr Scott

(Commonwealth's Exhibit 2).

This timely appeal followed the trial court's denial of Scott's post-sentence motion.

On appeal, Scott challenges the sufficiency and weight of the evidence supporting his Terroristic Threats and Harassment convictions. (*See* Scott's Brief, at 4). We begin by addressing his sufficiency claim in which he disputes the elements of intent and communication. (*See id.* at 8-12).[3] Scott claims that his intent in writing the notes on the receipt slips was to remain in administrative confinement, away from gang members, and was not to terrorize or harass anyone. (*See id.*). He also argues that the notes were never communicated to the nurses or other alleged intended victims. (*See id.* at 10-11).

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). To establish this offense, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was

---

[3] "Challenges to the sufficiency of the evidence are governed by our familiar and well-established standard of review. We consider the evidence presented at trial *de novo*." ***Commonwealth v. Chambers***, 188 A.3d 400, 409 (Pa. 2018) (citation omitted). "We are obliged to evaluate that evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor." ***Id.*** (citation omitted). "Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt." ***Id.*** (citation omitted). This is a question of law and our scope of review is plenary. ***See id.***

communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016) (citation omitted). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." ***Id.*** (citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Id.*** (citation omitted).

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S. § 2709(a)(4). "An intent to harass may be inferred from the totality of the circumstances." ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted).

Here, Captain Kevin Stevens, the SCI security captain, testified that he took Scott's messages to the superintendent seriously because Scott threatened the staff that presented a security issue for the institution. (***See*** N.T. Trial, 1/18/18, at 8). The notes themselves, which Scott admitted he wrote, plainly contain threats of violence against SCI staff members. His notes also state that prior threats at a different institution containing a warning went unheeded resulting in his sexual assault of a staff member. (***See id.*** at 5, 9, 30). Although Scott maintained that he wrote the notes because of his fear of gang members, he did not provide police with any names, nicknames,

descriptions or any other information to determine who these individuals could be. (*See id.* at 30-31). Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and looking at the totality of the circumstances, we conclude that the evidence was sufficient to establish Scott's communication of a threat of violence to SCI staff, with the intent to terrorize and harass them. *See Chambers*, *supra* at 409; *Cox*, *supra* at 721.

Scott next argues that the trial court ignored the weight of the evidence[4] which showed that he was motivated by fear of gang violence in writing the notes.[5] (*See* Scott's Brief, at 12-13).

The trial court, after sitting as fact-finder in Scott's bench trial, denied his weight claim, explaining:

> Through credible testimony, the Commonwealth presented the request slips that were authored and delivered by [Scott]. These notes provide the evidence to the threats to SCI staff. The

---

[4] Scott preserved his weight claim by raising it in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

[5] "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Thomas*, 194 A.3d 159, 167 (Pa. Super. 2018) (citation omitted). "It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 168 (citation omitted). This Court will give the grave consideration to the findings and reasons advanced by the trial judge because the judge had the opportunity to hear and see the evidence presented. *See id.*

notes were communicated to SCI staff, and the intent of the author was to terrorize SCI staff. The evidence to support the convictions is overwhelming[.] . . .

(Trial Court Opinion, 5/07/18, at 3).

After review of the record and giving grave consideration to the court's findings, we discern no abuse of discretion in its denial of Scott's weight claim.

***See Thomas***, ***supra*** at 167.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2019