J-S07005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN JONES | : | |
| | : | |
| Appellant | : | No. 551 MDA 2018 |

Appeal from the Judgment of Sentence February 28, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005514-2016,
CP-67-CR-0006180-2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY OLSON, J.:                              **FILED APRIL 17, 2019**

Appellant, Kevin Jones, appeals from the judgment of sentence entered on February 28, 2018, following his jury trial convictions for two counts each of burglary and criminal trespass and one count each of theft by unlawful taking, indecent assault, and criminal attempt of sexual assault.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  This appeal involves two separate incidents that occurred on July 17, 2016.  At trial, M.E.[2] testified that while sleeping in her bed, she awoke at 4:00 a.m. to find a man holding her hand.  N.T., 10/30/2017, at 109.  She told him to leave and he did.  *Id.*  M.E. noticed that a bottle of tequila was

---

[1]  18 Pa.C.S.A. §§ 3502(a)(1), 3503(a)(1)(ii), 3921(a), 3126(a)(1), 901(a)/3124.1, respectively.

[2]  We use the victims' initials to protect their identities.

---

\*   Retired Senior Judge assigned to the Superior Court.

missing and that a window was open. *Id.* at 114-117. Police responded to a call from M.E. and she gave them a description of the intruder. *Id.* at 112. Sometime later, police took M.E. to make an identification of a person they had taken into custody. *Id.* at 113. M.E. identified Appellant as the perpetrator. *Id.* She also identified Appellant at trial. *Id.*

P.S. also testified at trial. She testified that she returned home on July 17, 2016 between 1:00 a.m. and 2:00 a.m. after imbibing alcohol at a party. *Id.* at 126. P.S. testified that she had consensual sex with a male friend and that she fell asleep afterwards, but awoke to someone kissing her and feeling her breasts. *Id.* at 128-131. She also testified that the man was trying to penetrate her vagina with his flaccid penis and his hand. *Id.* at 131-134. P.S. testified that she assumed it was her male friend but that she smelled cigarette smoke and realized that she did not know the person in bed with her. *Id.* at 131-132. P.S. demanded the man identify himself and leave. The man replied, "I'm Kevin Jones" and acted as if they knew each other. *Id.* at 132. P.S. testified that she did not know the man and asked him to leave until he finally acquiesced. *Id.* Before leaving, the man asked P.S. for a bottle of tequila that he left in her room. *Id.* at 135. She gave it to him and he left. *Id.* P.S. called the police. *Id.* at 136. When she went outside, police already had Appellant in custody inside a police car, the bottle of tequila was on top of the car, and P.S. was able to identify Appellant. *Id.* at 137. Police recovered a pair of unidentified boxer shorts from P.S.'s bedroom. *Id.* at 140. P.S. went to York Hospital where a trauma nurse performed a sexual assault

examination. *Id.* at 140. P.S. gave a statement to police two days after the incident. *Id.* at 144. P.S. identified Appellant at trial. *Id.* at 137.

On November 2, 2017, a jury convicted Appellant of the aforementioned charges. On February 28, 2018, the trial court sentenced Appellant to an aggregate term of 12 to 24 years of incarceration. Appellant filed a timely post-sentence motion on March 8, 2018. The trial court denied relief on March 13, 2018. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1. The trial court erred when it misapplied the Rape Shield Law (Pa.R.E. 412/18 Pa.C.S.[A.] § 3104) by prohibiting Appellant from cross-examining the victim on prior sexual conduct on the evening of the incident. Appellant offered the testimony to demonstrate the victim had a poor memory of the evening and to demonstrate she was not credible as to the events of her allegation that Appellant assaulted or attempted to assault her in a sexual manner. Such impeachment testimony falls outside the scope of Section 3104, it was relevant, and it was not so overly prejudicial that the trial court should have prohibited the line of questioning of the victim. This limitation on cross-examination was an abuse of discretion, and a violation of Appellant's confrontation rights under the Sixth Amendment of the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution.

2. The Commonwealth presented insufficient evidence to convict Appellant of burglary beyond a reasonable doubt because the Commonwealth failed to prove Appellant entered the residence with the intent to commit a crime, namely, theft by unlawful taking.

_____

[3] Appellant filed a notice of appeal on March 23, 2018. On April 26, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 8, 2018.

Appellant's Brief at 5.

In his first issue presented, Appellant claims that the trial court abused its discretion when it relied upon the Rape Shield Law at 18 Pa.C.S.A. § 3104 to prohibit him from cross-examining P.S. regarding her consensual sexual activity on the same night, just prior to the incident at issue. Appellant's Brief at 15-21. Appellant claims that the line of questions were not directed toward her virtue and chastity. *Id.* at 15. Instead, Appellant argues that questions about the prior sexual encounter between P.S. and her male friend[4] were necessary because of discrepancies in her testimony as P.S. "had difficulty remembering whether [Appellant's] penis penetrated her vagina, which is a necessary element for [s]exual [a]ssault." *Id.* Thus, Appellant maintains "[t]he questioning about [P.S.'s] memory, including the earlier sexual activity occurring only several hours earlier, directly affected the jury's assessment of her credibility." *Id.* Additionally, Appellant claims that the Commonwealth opened the door to the prior consensual sexual activity by introducing evidence that in P.S.'s "inebriated and half-asleep state, she did not realize it was not her earlier sexual partner, [] but instead [Appellant] who returned to bed with her and attempted sexual intercourse." *Id.* at 20-21.

Our standard of review of a trial court's ruling on the admissibility of evidence is as follows:

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where

---

[4] P.S.'s friend did not testify at trial.

- 4 -

there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

**Commonwealth v. Burns**, 988 A.2d 684, 689 (Pa. Super. 2009) (*en banc*)

(internal quotations and citation omitted).

The Rape Shield Law provides:

(a)    General rule.--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b)    Evidentiary proceedings.--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an *in camera* hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

Here, upon our review of the record, Appellant did not file a written motion or make an offer of proof prior to trial and the trial court did not determine whether an *in camera* hearing was warranted pursuant to 18 Pa.C.S.A. § 3104(b). Instead, Appellant sought to question P.S. at trial about

- 5 -

consensual sex with an unrelated third-party. N.T., 10/30/2017, at 145-146.

An *en banc* panel of this Court, however, has previously determined:

> We have repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial. **See Commonwealth v. Beltz**, 829 A.2d 680, 684 (Pa. Super. 2003) (failure to make written motion bars review of decision at trial to exclude); **Commonwealth v. Kunkle**, 623 A.2d 336, 339 (Pa. Super. 1993), *appeal denied*, 637 A.2d 281 (Pa. 1993) (defendant's oral motion during trial, rather than a written motion and specific offer of proof, was wholly inadequate and there was no abuse of discretion by the trial court when it barred evidence pertaining to the prior sexual assault of the victim). We will presume that the legislature intended "shall" to be mandatory in the statute at hand. **See generally Commonwealth v. Menezes**, 871 A.2d 204, 209 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005). [T]he rape shield laws, as enacted by the various states, "were intended to end the abuses fostered by the common law rule by limiting the harassing and embarrassing inquiries of defense counsel into irrelevant prior sexual conduct of sexual assault complainants." **Commonwealth v. Nieves**, 582 A.2d 341, 346 (Pa. 1990), *appeal denied*, 600 A.2d 952 (Pa. 1991). The requirement of a specific proffer of evidence was designed to prevent a "fishing expedition" into the areas protected by the Rape Shield Law. **Commonwealth v. Wall**, 606 A.2d 449, 457 (Pa. Super. 1992), *appeal denied*, 614 A.2d 1142 (Pa. 1992).
>
> In determining whether the application of the Rape Shield Law violates a defendant's constitutional rights to confront and cross-examine witnesses against him, this [C]ourt has [] held:
>
>> In Pennsylvania, we have come to resolve this question through a relatively elaborate procedure which is designed to ensure that no evidence of the victim's sexual history is introduced unless and until it can be established that to exclude such evidence would lay victim to the very *raison d'etre* of the trial itself: the pursuit of truth. The process begins with the defendant submitting a specific proffer to the court of exactly what evidence he or she seeks to admit and precisely why it is relevant to the defense. This

procedure forces the defendant to frame the precise issues and interests involved, and prevents him or her from embarking upon 'fishing expedition style intrusions on Rape Shield Law protections.' Where the proffer is but vague and conjectural, evidence of the victim's past sexual conduct will be excluded and no further inquiry need be entertained.

**Burns**, 988 A.2d at 690–691 (some citations omitted).

Here, there was no written motion or offer of proof filed prior to trial. Such failure was fatal to Appellant's claim and bars our review of the trial court's decision to prohibit the line of questioning. Moreover, assuming *arguendo* that Appellant properly raised and preserved the claim, our review leads to the conclusion that the trial court properly precluded the evidence in contention. We have recently reiterated:

[T]he Rape Shield Law must at times yield to a defendant's right to cross-examine witnesses and instructs the trial court to conduct a balancing test that considers whether the proposed evidence is relevant to attack credibility, whether the probative value outweighs the prejudicial impact and whether there are alternative means to challenge credibility:

Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility.

Also, this [C]ourt has held that evidence of past sexual conduct by the victim with third persons is of little relevance to the issue

of consent between the victim and a defendant when the victim and defendant did not have a prior sexual relationship.

***Commonwealth v. Cramer***, 195 A.3d 594, 603 (Pa. Super. 2018) (internal citations and original emphasis omitted).

Here, the trial court determined that the prejudice to the victim outweighed the probative value of the proffered evidence and there were alternative means to test the victim's credibility. It opined that Appellant tested the victim's credibility by questioning: (1) the victim about her level of intoxication and recollection of events; (2) the trauma nurse about the victim's ability to remember details of the incident; and, (3) the officer who memorialized the victim's statements soon thereafter. ***See*** Trial Court Opinion, 8/8/2018, at 25. Moreover, the trial court noted that the jury was able to "sift" through the victim's testimony in determining her credibility, because it acquitted Appellant of a "completed sexual assault" and, therefore, could "draw a distinction regarding penetration." ***Id.*** We agree with the trial court's balancing assessment and discern no abuse of discretion in precluding cross-examination about P.S.'s prior unrelated sexually activity. Accordingly, Appellant's first claim lacks merit.

Next, Appellant claims that the Commonwealth failed to present sufficient evidence to support his conviction for burglary, because it did not prove that Appellant entered M.E.'s residence with the intent to commit a crime therein. Appellant's Brief at 22-24. In sum, he contends:

> While [Appellant] stole a bottle of tequila for which a jury convicted him, the circumstances do not suggest that he entered with such intent. He did not immediately raid the liquor cabinet,

nor did he rummage through any other areas of the home looking for valuables. At best, the evidence demonstrates that after [M.E.] realized he was in the residence and told [him] to leave, [Appellant] grabbed the bottle of tequila on the way out the door. This demonstrates [Appellant's] intent to steal the bottle formed after, not contemporaneously, with the act of entering [M.E.'s] residence without permission.

The Commonwealth may contend that [Appellant] was in the process of committing some form of assault on [M.E.] and that is sufficient to demonstrate a contemporaneous intent to commit a crime as he entered the residence. However, [M.E's] testimony demonstrates that [Appellant] never took any steps to get into bed or remove his (or her) clothes while in [M.E.'s] residence. [Appellant] held her hand and talked to her until she woke up and told him to leave. When told to leave, he did so immediately. Beyond a tenuous assumption based on these facts, no other evidence was presented to suggest [Appellant] entered [M.E.'s] residence with an intent to commit any crime.

*Id.* at 23-24.

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Thomas*, 194 A.3d 159, 166 (Pa. Super. 2018) (internal citations and quotations omitted).

"Burglary is defined as the act of entering or occupying a structure with intent to commit a crime therein." *Commonwealth v. Baker*, 2018 WL 6729840, at *4 (Pa. Super. 2018), *citing* *Commonwealth v. Magnum*, 654 A.2d 1146, 1147 (Pa. Super. 1995); 18 Pa.C.S.A § 3502(a)(2). A "totality of the circumstances" approach is implemented where "[t]he Commonwealth must establish, as part of its evidentiary burden, additional evidence that goes beyond the mere breaking in of a door or window." *Baker*, 2018 WL 6729840, at *4 (citation omitted). Our Supreme Court has also stated:

> [I]n order to secure a conviction for burglary, the Commonwealth is not required to allege or prove what particular crime [a defendant] intended to commit after his forcible entry into the private residence. A conclusion to the contrary would place the police and citizens of this Commonwealth in the dangerous position of having to permit a burglar to take a substantial step towards the commission of a particular crime, potentially risking violence, in order to secure a conviction for burglary.

*Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994).[5] In addition, flight can constitute circumstantial evidence of consciousness of guilt. *See*

---

[5] Apropos to the instant case, the *Alston* decision also cited Justice James T. McDermott's decision in *Commonwealth v. Wagner*, 566 A.2d 1194, 1194 (Pa. 1989), wherein Justice McDermott stated:

***Commonwealth v. Housman***, 986 A.2d 822, 831 (Pa. 2009) (citation omitted).

Here, Appellant intentionally and surreptitiously entered M.E.'s premises by opening and climbing through a window. Once inside, Appellant sat quietly next to M.E. and held her hand while she slept. When the victim woke up and demanded Appellant leave, he fled. The fact that Appellant did not commit any sexual or physical acts against M.E. (ostensibly because she awoke and demanded Appellant leave) did not prohibit a jury from finding that Appellant intended to commit a crime against the victim when he entered her home through a window. The Commonwealth was not required to specify the intended crime and Appellant did not have to take a substantial step towards the commission of a specific crime. Moreover, Appellant does not dispute that

_____

> When a stranger first tries to enter your garage, and then breaks the window of your door, on a given evening, neither you nor a jury should be considered harsh, if you believe he is not an aimless waif bringing compliments of the evening, or a passing sojourner of eccentric ways, or a harmless loiterer in the evening shadows.
>
> Those supporting reversal would have us believe that hiding in your bedroom under such conditions is an unnecessary foolishness in the presence of simple pleasantries. They would see no evil through such jaundiced eyes, hear none in the melodious tinkle of your breaking window, and obviously would say no evil of a man with an umbrella. The jury could find, and did, more sinister reasons afoot. I would leave the appellant[, Wagner,] where they found him, doing what they had every right to believe he was doing, attempting a burglary.

***Alston***, 651 A.2d at 1095, *citing* ***Wagner***, 566 A.2d at 1194.

he actually stole a bottle of tequila from the residence while inside. Instead, he contends that he did not form an intent to take the liquor prior to entry. Based upon a totality of the circumstances, however, the jury was free to determine otherwise and we will not usurp that decision. Finally, Appellant fled the residence and the jury was free to infer that Appellant's consciousness of guilt further supported an intent to commit a crime. Based upon the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence showing Appellant intended to commit a crime before entering M.E.'s residence. Hence, the trial court did not abuse its discretion or err as a matter of law in rejecting Appellant's sufficiency challenge and Appellant's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/17/2019

- 12 -