J-S09033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY JOHN COLLINS | : | |
| | : | |
| Appellant | : | No. 1223 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 3, 2018
in the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000760-2017

BEFORE: PANELLA, P.J., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED MAY 10, 2019**

Timothy John Collins (Appellant) appeals from the judgment of sentence imposed following his conviction for driving under the influence (DUI) - general impairment. We affirm.

Appellant's charges stem from an incident occurring on October 21, 2017. At Appellant's non-jury trial, the following evidence was presented. Late in the evening, likely sometime after 9 p.m., Richard Stewart pulled up to his residence at the Dale Avenue Apartments. N.T., 6/15/2018, at 21-23, 29. As he was doing so, he saw Appellant[1] "banging" on the door of Apartment 104. *Id.* at 24. A blue SUV was parked in Stewart's normal spot, so Stewart parked his car elsewhere. *Id.* at 23. After noticing

---

[1] Stewart identified Appellant in court as the person he saw. *Id.* at 26.

---

* Retired Senior Judge assigned to the Superior Court.

Stewart's arrival, Appellant asked Stewart whether Appellant's SUV was parked in Stewart's spot; Stewart said no. *Id.* Appellant offered to yank the car out of the spot with a chain, but Stewart declined. *Id.* Stewart believed Appellant was intoxicated because his speech was slurred "pretty bad." *Id.* at 24, 31. Appellant went to the SUV and spoke to a black man (later identified as Taco),[2] who was sitting in the front passenger seat of the SUV. *Id.* at 24-25. Appellant then briefly banged on the front door of Apartment 104 for a second time before Stewart observed Appellant get into the driver's seat of the SUV and drive away. *Id.* at 25.

Approximately a half-hour later, the blue SUV returned to the Dale Avenue Apartments. *Id.* at 26. From his apartment window, Stewart saw that Appellant was driving and Taco was sitting in the front passenger seat. *Id.* at 26, 29. The street lights and lights on the apartment building illuminated the area. *Id.* at 30. A few minutes later, Stewart noticed that the police had arrived and they were giving Taco a breathalyzer. *Id.* at 27-28. Appellant was no longer around. *Id.*

According to Officer Kenneth Scott of the City of Franklin Police Department, police had been dispatched to Apartment 104 at the Dale Avenue Apartments around 10:30 p.m. to respond to a noise complaint

---

[2] The man's name is unclear from the record. Although it appears it may be Eugene Sanders, the only definitive identification of him was by Appellant, who referred to him by the man's nickname, Taco. Accordingly, we shall refer to him as Taco in this memorandum.

regarding door-knocking by a black male and white male. *Id.* at 4-6, 8. When they arrived, the officers found a blue SUV that had been reported stolen that evening. *Id.* at 6. A black male – presumably Taco – was operating the vehicle and the officers arrested him for DUI. *Id.*

Around 11:00 p.m., Officer Scott was dispatched to 610 10th Street, which was a few minutes' drive away from the Dale Avenue Apartments, due to the report of the stolen blue SUV. *Id.* at 4-5, 18. When he arrived at 610 10th Street, Officer Scott spoke to Appellant and the owner of the blue SUV, Steve Godden, and informed them that the police did not believe the blue SUV had been stolen. *Id.* at 7. Godden admitted that he had permitted Appellant and Taco to drive the vehicle to the Dale Avenue Apartments. *Id.* Appellant and Taco had returned to 610 10th Street but left for a second time without notifying Godden, prompting him to report the vehicle as stolen. *Id.*

Appellant then admitted to Officer Scott that he had driven the blue SUV from 610 10th Street to the Dale Avenue Apartments twice that evening. *Id.* He told Officer Scott that after he had driven to the Dale Avenue Apartments a second time, he saw the officers pull up. *Id.* He left the blue SUV there and returned to 610 10th Street on foot because he did not want to get in trouble for operating a vehicle under the influence. *Id.*

While he was talking to Appellant, Officer Scott noticed that Appellant seemed to be intoxicated. *Id.* at 9-10. Appellant's speech was slurred, his

gait was unsteady, he was leaning against a vehicle to keep himself from swaying, his clothing was disheveled, he smelled like alcohol, and his eyes were bloodshot and glassy. *Id.* Officer Scott administered various field sobriety tests on the spot; Appellant's performance on these tests was unsatisfactory. *Id.* at 10-11. Based on his observing signs of intoxication and Appellant's performance on the field sobriety tests,[3] Officer Scott determined that Appellant would not have been capable of operating a motor vehicle safely earlier. *Id.* at 13. Accordingly, Officer Scott placed Appellant under arrest.

In contrast, Appellant testified that on the evening of October 21, 2017, he was at a bar taking out garbage. *Id.* at 47. He received two drink chips for doing so; he gave one to Godden and used the other to buy a beer, of which he only drank half. *Id.* He asked Godden if he could borrow his car to go to his sister's house since she had beer there. *Id.* Appellant did not believe he could walk because he had burned his feet in a fire a few weeks before and he had a bad hip. *Id.* At some point, Appellant agreed to give Taco a ride to find a girl named Patty, and when they arrived, Appellant helped Taco bang on some doors to look for Patty. *Id.* at 48. Appellant encountered Stewart, and they discussed whether Appellant was in Stewart's parking spot. *Id.* at 48-49. Appellant claimed his slurred speech must have

_____

[3] Appellant initially agreed and then refused to take a blood alcohol test. *Id.* at 14.

- 4 -

been due to his dry mouth, which is a side effect of his psychiatric medications. *Id.*

According to Appellant, he then drove the blue SUV to 10th Street, parked it near a Shop 'n Save store, threw the keys in the console, and walked over to his sister's house. *Id.* at 49-51. He arrived around 9 p.m., and drank six or eight beers. *Id.* Appellant was on the front porch of his sister's house when he saw Godden, who could not find his blue SUV. *Id.* Appellant told him where he had parked it, but Godden said it was missing, and they called 911. *Id.* at 49-50. During his testimony, Appellant denied driving the blue SUV to the Dale Avenue Apartments a second time and telling Officer Scott that he had driven while drunk. *Id.* at 50-51, 57-58.

Appellant's nephew and sister testified as defense witnesses, claiming that Appellant had arrived at their house at 610 10th Street sometime around 9 p.m., and did not seem to be intoxicated. *Id.* at 35, 45. Appellant's sister went to bed around 9:30 p.m. and had no further interactions with Appellant. *Id.* at 45. She did not realize the police had been to the house until she was told the next morning. *Id.* at 45-46. After seeing Appellant when he first arrived, Appellant's nephew went back upstairs. *Id.* at 35. He came back downstairs around 10:00 or 10:30 p.m. *Id.* at 38. By that point, he saw that Appellant had had a few beers, but Appellant's nephew said he did not think Appellant was "shit-faced" drunk yet because Appellant was not being rude to him and making wisecracks like

- 5 -

he normally did when he was drunk. *Id.* Appellant's nephew thought it was unlikely that Appellant left the house again because he did not hear their dogs bark; however, he conceded it was possible because he was upstairs, plus the dogs were familiar with Appellant. *Id.* at 40-41.

In short, the Commonwealth's witnesses contended Appellant drove the blue SUV two times between 610 10th Street and the Dale Avenue Apartments, and he was drunk while doing so. Appellant only admitted to driving the blue SUV once, claimed he had only had one-half of a beer before doing so, and that he did not get drunk until after he drove. At the conclusion of the trial, the trial court resolved the conflict in the testimony in favor of the Commonwealth, found Appellant guilty, and sentenced Appellant to six months' probation.

Appellant timely filed a notice of appeal. Both Appellant and the trial court ultimately complied with Pa.R.A.P. 1925. Appellant raises one claim on appeal: whether the evidence was sufficient to convict him of DUI because there was no evidence demonstrating that Appellant drove the blue SUV while he was so drunk that he was incapable of safely driving.[4] Appellant's Brief at 5.

---

[4] Appellant has failed to follow the Rules of Appellate Procedure insomuch as his statement of the case contains argument, fails to set forth any record citations, and does not set forth all necessary facts. *Compare* Appellant's Brief at 6 *with* Pa.R.A.P. 2117. We further note with disapproval that the
*(Footnote Continued Next Page)*

According to Appellant, the Commonwealth's theory is that he drove the blue SUV a second time from his sister's house to the Dale Avenue Apartments, abandoned the blue SUV at the Dale Avenue Apartments when he saw police arrive, and ran back to his sister's house on foot notwithstanding his burnt feet and bad hip. *Id.* at 10. Appellant argues that Commonwealth's theory "does not fit the evidence for a later middle-aged man to accomplish," especially because he supposedly ran back to his sister's house between 10:30 p.m., when the police arrived at the Dale Avenue Apartments, and 11:00 p.m., when the police arrived at his sister's house. *Id.* Appellant admits to failing the field sobriety test, but claims this was due to the 6-8 beers he drank at his sister's house between 9:00 p.m. and 11:00 p.m., when the police showed up to inquire about the missing blue SUV. *Id.* at 9. Thus, he argues that there is insufficient evidence to prove he was drunk while he was driving the blue SUV. *Id.* at 9-10.

We assess Appellant's argument that the evidence was insufficient to convict him of DUI by the following standard.

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

Commonwealth did not file a brief in this matter or even notify this Court that it would not be filing a brief.

favorable to the Commonwealth[.] The evidence need not preclude every possibility of innocence….

***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (internal citations and quotation marks omitted).

"This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" ***Commonwealth v. Thomas***, 194 A.3d 159, 166 (Pa. Super. 2018) (citation omitted).

In order to prove Appellant was guilty of DUI - general impairment, the Commonwealth needed to prove that Appellant drove the blue SUV at a point in time when his alcohol use had rendered him incapable of safely driving. ***See*** 75 Pa.C.S. § 3802(a)(1) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."). The relevant timeframe for intoxication is at the time of driving. ***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). The Commonwealth may establish the elements of subsection 3802(a)(1) by circumstantial evidence, "including, but not limited to, the offender's actions

and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol; and slurred speech." *Id.*

Here, the trial court deemed the Commonwealth's evidence to be sufficient to establish all elements of subsection 3802(a)(1). Trial Court Opinion, 11/2/2018, at 5. We agree, in light of the testimony describing the following: Stewart's observation of signs of Appellant's intoxication immediately before Stewart saw Appellant drive the blue SUV the first time; Officer Scott's observation of signs of Appellant's intoxication and Appellant's failure of the field sobriety test approximately one-half hour after Stewart saw Appellant driving the car the second time; Officer Scott's assessment that Appellant would not have been capable of operating a motor vehicle safely just one-half hour earlier; and Appellant's admissions to Officer Scott that Appellant had driven the car twice and abandoned the vehicle when the police came because he was afraid of getting a DUI. Based upon *Segida*, this evidence was sufficient to prove circumstantially that Appellant drank before driving the blue SUV and his alcohol use rendered him incapable of safely driving.

Much of Appellant's sufficiency argument really is a challenge to the weight of the evidence in disguise, insomuch as he is asking us to credit his testimony instead of the testimony of the Commonwealth's witnesses.

Credibility conflicts go to the weight, not the sufficiency of the evidence.[5]

***Commonwealth v. Stahl***, 175 A.3d 301, 305-06 (Pa. Super. 2017). It is apparent that the trial court found the testimony of the Commonwealth's witnesses more credible than Appellant's testimony. Further, the trial court did not afford the testimony of Appellant's nephew and sister "much weight" due to their relationship to Appellant and apparent lack of knowledge of what actually transpired on the night in question. Trial Court Opinion, 11/2/2018, at 5. "Credibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part, or none of the evidence." ***Commonwealth v. Kitchen***, 162 A.3d 1140, 1144 (Pa. Super. 2017).

Accordingly, the trial court did not err in concluding that the Commonwealth proved all of the elements of subsection 3801(a)(1) beyond a reasonable doubt. Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

---

[5] Challenges to weight and sufficiency are distinct legal claims; Appellant has waived any challenge to the weight of the evidence by failing to file a post-sentence motion and including such a challenge in his concise statement and statement of questions involved. ***See Commonwealth v. Kinney***, 157 A.3d 968, 971-72 (Pa. Super. 2017).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/2019