J-S27004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE EDWARD BROWN | : | |
| | : | |
| Appellant | : | No. 131 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 4, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0000551-2022

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 13, 2026**

Appellant, Bruce Edward Brown, appeals from his judgment of sentence of 28½—57 years' imprisonment for third degree murder and firearms convictions. We affirm.

This case arises from the shooting death of Jamil Mallory ("the victim") on April 8, 2021. Thomas Croone, a witness to the shooting, testified that, on April 8, 2021, he was with the victim – a longtime friend – at Jerry's Bar in East Lansdowne. Croone also knew Appellant for many years. Prior to that evening, Croone referred the victim to Appellant's autobody shop. The victim took his truck to Appellant's shop. After inspecting the truck, Appellant told the victim that the problem was not fixable. The victim came to pick up his truck and told Appellant that he would pay him later, but he never did.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant came into the bar that evening to speak with the victim regarding the outstanding balance. The victim told Appellant he would not pay because his truck was not fixed. Both men appeared agitated. N.T., 8/19/2024, at 140-158, 162-184.

Raymund Clark testified that he was bartending on the evening that the victim was murdered. Clark observed Appellant come into the bar and sit next to the victim. Clark could tell that the conversation was making the victim agitated. N.T., 8/20/2024, at 4-19.

Eventually, Appellant left the bar. Croone followed Appellant out to his car and offered to pay some of the outstanding balance. Appellant agreed and accompanied Croone to an ATM across the street from the bar. While they were gone, Clark saw the victim leave the bar and go out front. Because of the conversation between Appellant and the victim, Clark started watching the surveillance cameras showing the outside front of the bar. *Id.*

As Croone and Appellant were walking back from the ATM, Croone noticed that a group of people had formed outside, including the victim. Croone saw the victim exchange words with Henry Fleuridor, Appellant's coworker and friend. He observed the victim take off his glasses, hand them to someone, and then punch Fleuridor in the face, causing him to stumble backwards. Fleuridor did not fight back. Instead, after stumbling briefly, he started walking away. Appellant then shot the victim, causing him to fall to the ground. Appellant stood over the victim, shot him twice more, and then fled across the street. Clark witnessed the shooting on the surveillance video

and ran out to help. Croone and Clark remained with the victim and tried to render aid until the police arrived. Video footage of the shooting was played for the jury. The video clearly showed Appellant firing three shots at the victim from close range. Croone identified himself and the victim on the video. At no time that evening did Croone or Clark see the victim with a firearm or hear him threaten to kill anyone. N.T., 8/19/2024, at 140-158, 162-184; N.T., 8/20/2024, at 4-19.

Video footage obtained from a nearby office showed a black truck with the words "Car Care Center" on the driver's side door parked in the laundromat across the street from the bar. The car left quickly after the shooting. Officer Kevin Myers[1] put a notification about the truck into "Delco Crime Stat" a system which goes out to all the local departments. N.T., 8/19/2024, at 192-200.

On April 12, 2021, several days after the shooting, the system alerted that the truck was parked at the "Car Care Center" autobody shop, Appellant's business, located in Upper Darby. Officer Myers and Detective James Cadden drove to the shop. Because it is technically Upper Darby jurisdiction, Officer Myers contacted Upper Darby's police department, but he remained on scene with the truck in case Appellant tried to leave. Detective Cadden saw Appellant exit a bathroom on the side of the building. Detective Cadden attempted to speak with him, but Appellant ran inside the shop and locked the

---

[1] Except where otherwise indicated, the police witnesses who testified during trial were employees of the Lansdowne Police Department.

door. Upper Darby Police and SWAT personnel executed a search warrant on the business that day. Detective Cadden and Officer Myers also assisted in the search. Officers located Appellant inside the shop, sitting in an area that resembled a studio apartment, with a futon and trash piling up, as if Appellant were living or hiding out there. Next to Appellant was a safe containing a revolver, the same type of firearm used in the shooting. Detective Cadden testified that they knew a revolver was used in the shooting because no shell casings were found at scene, and revolvers (unlike semi-automatic firearms) do not dispel the cartridge after the gun is fired. N.T., 8/19/2024, at192-200. To determine whether the firearm found in the safe was used in the shooting, the police sent the revolver to a Delaware County ballistics expert for testing. N.T., 8/20/2024, at 20-51.

Detective Matthew Rowles, who assisted in the execution of the search warrant, testified that he has been an Upper Darby Police Department employee for 22 years. He recovered a large sum of money from Appellant, separated into several sets of cash: one set of $95.00, another of $1,220.00 and one of $1,450.00. His investigation revealed that Appellant did not have a license to carry a firearm. *Id.* at 94-102, 115.

Detective Louis Grandizio testified that he is employed with the Delaware County Criminal Investigative Division as a firearms examiner. Detective Grandizio was offered and accepted as expert in firearms and toolmark examination. He personally examined the firearm located in Appellant's safe and bullet fragments removed from the victim's body. He

concluded that the bullet fragments were not fired from the revolver found in the safe, meaning that the revolver located in the safe was not the same revolver used to shoot the victim. *Id.* at 86–91; exhibit C-60.

In lieu of the medical examiner's testimony, the parties entered into a stipulation to the medical examiner's report. Exhibit C-47. The parties stipulated that the victim suffered three gunshot wounds: one to his right chest, one to his left chest, and one to his torso. The parties further stipulated that the manner of death was homicide and the cause of death was gunshot wounds. *Id.* at 53.

Appellant presented two witnesses during his case–in–chief. Henry Fleuridor testified that he is 37, lives in Philadelphia and that he went to middle school with the victim. Fleuridor also attended trade school with Appellant, works with him at the shop, and considers him to be family. Fleuridor went to the bar on the evening of the shooting with a friend named Dre. They had no plans to hang out with the victim or Appellant that night and did not know that either person was there. As Fleuridor approached the bar, the victim, who seemed drunk, started yelling at him. Fleuridor was confused because he and the victim usually shake hands when they see each other out. As the victim continued trying to instigate a fight, Fleuridor testified that he started laughing because he had no idea what was going on. A crowd gathered around them quickly. Fleuridor testified that he recalls the victim saying, "Pussy, I'll kill you" and then someone behind him saying, "Nobody is going to do anything to him." When Fleuridor turned his head to see who spoke, the

victim hit him in the face. Fleuridor did not fight back but simply walked away. Despite hearing multiple gunshots, Fleuridor claimed that he did not look back to see what happened and was never in fear for his life. *Id.* at 128-147.

Appellant testified that at the time of the shooting, he was 53 years old. He has a son, daughter, and wife and has worked as a mechanic for 18 years. He moved his autobody shop from Philadelphia to Upper Darby after it was robbed. Appellant testified that he often helps people at the shop by allowing them to pay when they can. Appellant testified that Croone referred the victim to his body shop because the victim believed his truck was leaking antifreeze. Appellant took the car apart and realized that was not the actual issue and that the actual problem could not be fixed. He relayed this information to the victim, who asked Appellant to put the truck back together so he could pick it up. Appellant did so and charged the victim $500.00. The victim told Appellant he would bring him money but never did. Appellant eventually told Croone that the victim still owed him money. N.T., 8/21/2024, at 10-70.

On the day of the shooting, Appellant alleged that the victim called and told him he had the money. Appellant admitted that he did not know the victim's phone number but that the person on the other line claimed to be the victim, who instructed him to meet at the laundromat across from Jerry's Bar. Appellant testified that he had a gun with him, and that he carried a gun at all times after he was robbed. Appellant went to the parking lot but did not see the victim. Appellant testified that he called the number, and the victim

answered and told him to come into Jerry's Bar. Inside the bar, Appellant testified that the victim was "belligerent" and told him that he was not going to pay for an unfixed truck. Appellant claimed to observe a firearm on the victim's waistband area. *Id.* at 10-70.

When it was clear that the victim was not going to pay, Appellant claimed he no longer cared about the money and left the bar intending to go home when Croone appeared and offered to pay the victim's balance. The two walked to the ATM together. While walking back from the ATM, Appellant claimed that he observed Fleuridor outside of Jerry's Bar and wanted to warn Fleuridor that the victim was inside. As Appellant approached, Appellant realized the victim was already outside yelling at Fleuridor, saying he (the victim) would "fuck [Fleuridor] up." *Id.* at 51. Appellant testified, "I told [the victim] you ain't going to hurt [Fleuridor]. You know what I mean, why are you mad at him when you owe me money?" *Id.* at 53. Appellant claimed that the victim responded, "That's why I'm gonna try and shoot both of you niggas." *Id.*

Appellant testified that he saw the victim hand something to another person (his glasses) but, despite being right in front of the victim, Appellant alleged that could not tell what the object was. Appellant claimed this action placed him in fear for his own life. Appellant testified that he already had his hand on his firearm when the victim punched Fleuridor. Appellant claimed that he believed the victim was going to kill Fleuridor, so he shot the victim. Appellant asserted that while the victim was on the ground, he saw the victim

reach for his waistband, so he shot him again. The third shot was fired as the victim had both his hands by his head. Appellant claimed not to recall what happened and suggested that maybe someone pushed him, causing the gun to fire. *Id.* at 10-70. Appellant stopped shooting only when he realized that someone in the crowd had pulled out a gun and pointed it at him. Appellant immediately left in his truck. Appellant testified that he gave the gun to a friend named Marcus, whose last name he claimed to not remember. Several days later, when police came to his autobody shop, he locked the doors so he could have more time to call his wife. Appellant claimed the gun located in the safe was a friend's gun. *Id.*

The jury found defendant not guilty of first-degree murder but guilty of third-degree murder and carrying firearms without a license. Following this verdict, the jury was presented with evidence concerning the charge of persons not to possess firearms. The jury found defendant guilty of this charge. On November 4, 2024, the court entered sentence. Appellant filed timely post-sentence motions alleging that the verdict was against the weight of the evidence and that his sentence was excessive. The court denied these motions, and Appellant timely appealed to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal, which we re-order for purposes of convenience:

> 1. Whether the evidence was insufficient to establish Murder of the Third Degree where the Commonwealth failed to prove beyond a reasonable doubt that Appellant acted with malice; the

Commonwealth failed to prove that Appellant's actions show his wanton and willful disregard of an unjustified and extremely high risk, that his conduct could result in death or serious bodily injury to another?

2. Whether the verdict for count 3, Murder of the Third Degree, was against the weight of the evidence, inasmuch as the evidence presented was so inherently unreliable and contradictory in light of Appellant's establishment that the decedent was the initial aggressor such that the determination that Appellant acted with malice and of Appellant's guilt was manifestly unreasonable, in violation of Appellant's Due Process rights under the United States and Pennsylvania Constitutions, and a new trial was warranted in the interest of justice?

3. Whether the trial court erred and abused its discretion by admitting evidence of a second firearm unrelated to the shooting at issue that was located in Appellant's business as a result of the execution of a search warrant, inasmuch as evidence of an unrelated firearms was not relevant under Pa.R.E. 401, was not admissible of other acts evidence under Pa.R.E. 404(b), and any probative value did not outweigh the potential for unfair prejudice, confusion of the issues or misleading the jury, in violation of Appellant's Due Process rights under the United States and Pennsylvania Constitutions?

4. Whether the trial court erred as a matter of law and violated the discretionary aspects of sentencing, specifically the requirements of 42 Pa.C.S.[A.] §9721(b) of the Sentencing Code, in that the trial court's decision to impose statutory maximum consecutive sentences raises the aggregate sentence of a *de facto* life sentence which ignores the jury verdict of not guilty to Murder of the First Degree and the trial court couched its reasons for the sentence imposed in terms of seriousness of the offense and not giving consideration to Appellant's expression of remorse and other mitigating factors including Appellant's psychological issues and Appellant's need for rehabilitation?

5. Whether the trial court erred as a matter of law, inasmuch as the trial court did not place the applicable sentencing guidelines on the record at the time of sentencing therefore it is unclear whether the court took into consideration the appropriate sentencing guidelines at the time of sentencing Appellant?

Appellant's Brief at 5-6.

Appellant argues that the evidence was insufficient to support his conviction for third-degree murder. Our standard of review is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019).

Third-degree murder is defined as "all other kinds of murder, *i.e.*, those committed with malice that are not intentional (first-degree) or committed during the perpetration of a felony (second-degree)." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (cleaned up) (evidence was sufficient to support finding of malice to sustain defendant's conviction for third-degree murder); *see also* 18 Pa.C.S.A. § 2502(c). The *mens rea* required for a conviction of third-degree murder is malice. *Id.* Pennsylvania courts have "consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious

- 10 -

disregard for 'an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" ***Id.*** (citing ***Commonwealth v. Santos***, 876 A.2d 360, 364 (Pa. 2005)). Malice may be inferred from a defendant's use of a weapon on a vital part of the victim's body. ***Commonwealth v. Truong***, 36 A.3d 592, 598 (Pa. Super. 2012); ***Commonwealth v. Gooding***, 818 A.2d 546, 550 (Pa. Super. 2003).

The evidence supports Appellant's conviction for third-degree murder. Appellant shot the victim in the torso, a vital part of his body, while standing mere feet from him. Then, while the victim was lying wounded on the ground with his hands in the air, Appellant walked closer to him and shot him two more times in the chest, all of which was captured on video. Appellant's actions readily demonstrate ill will and disregard of an extremely high risk that he would cause the victim's death or, at least, serious bodily injury. ***Truong***, ***Gooding***, ***supra***,

Moreover, the killing was not justifiable as self–defense or defense of others. "To establish the defense of self-defense or defense of others, it must be shown that: (1) the slayer or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the slaying; (2) the slayer must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself or the other therefrom; and (3) the slayer or the other he seeks to protect did not violate

any duty to retreat or to avoid the danger." ***Commonwealth v. Hornberger***, 74 A.3d 279 (Pa. Super. 2013).

The Commonwealth's evidence refutes Appellant's claim of self-defense or defense of others. Despite Appellant's attempt to make the jury believe that the victim had a firearm, multiple witnesses testified, and the video corroborated, that the victim was unarmed. Appellant's testimony that the victim was reaching for his waistband was negated by the video, which clearly showed the victim's hands towards his head. No evidence suggested that Appellant reasonably believed his life was in danger. Moreover, Fleuridor testified that he was laughing at the victim, not fearful of him. Even after he was punched, Fleuridor walked away. One punch to the face did not support Appellant's alleged belief that shooting the victim three times was necessary to prevent death or serious bodily injury to Fleuridor.

Thus, Appellant's challenge to the sufficiency of the evidence fails.

Next, Appellant contends that the trial court erred by denying his challenge to the weight of the evidence. We conclude that the trial court properly rejected this challenge.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Thomas***, 194 A.3d 159, 167 (Pa. Super. 2018). A trial court may only find that the verdict is against the weight of the evidence when it is so contrary to the evidence as to shock one's sense of justice. ***Id.*** The defendant is not entitled

to relief on a weight claim because of a mere conflict in the testimony or because a different judge on the same facts would have arrived at a different conclusion, but only where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). In arguing that the verdict is contrary to the weight of the evidence, the defendant concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014).

Appellant's claim rests on the premise that the jury did not credit his testimony that the murder was justified. Appellant insisted that the victim was armed, an assertion that the Commonwealth's witnesses and the video of the shooting refuted. He argued that the victim was beating Fleuridor to death, yet Fleuridor, the video, and all of the Commonwealth's witnesses testified that the victim punched him just hard enough to cause him to stumble backwards. He was capable of walking away, which he did, before Appellant shot the victim. The jury chose not to credit Appellant's claim that the victim's punch created a life-threatening emergency that required Appellant to shoot him three times to save himself or Fleuridor. The court thus acted within its discretion by determining that the verdict was not so contrary as to shock one's sense of justice.

Next, Appellant argues that the trial court abused its discretion by permitting the Commonwealth to introduce evidence of the firearm recovered from his autobody shop during the execution of a search warrant.

We review the court's evidentiary rulings for abuse of discretion. **See Commonwealth v. Young**, 989 A.2d 920, 924 (Pa. Super. 2010).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

**Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa. Super. 2012).

It is well settled that "evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." **Commonwealth v. Garnett**, 328 A.3d 1181, 1186 (Pa. Super. 2024); **see also** Pa.R.E. 404(b)(1). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." **Id.** Specifically, evidence of other crimes or bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Pa.R.E. 404(b)(2). Evidence of this kind may also be admissible under the *res gestae* exception, "where such evidence became part of history of the case and formed part of the natural development of facts." **Id.**; **see also Commonwealth v. Dillon**, 925 A.2d 131, 137 (Pa. 2007) ("this Court has recognized a *res gestae* exception to

- 14 -

Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime").

The Commonwealth attempts to justify the trial court allowing admission of the body shop gun on two grounds. First, it contends that the evidence was admissible under Rule 404(b) because the evidence of the firearm was relevant to show Appellant's intent, knowledge and consciousness of guilt. Appellant testified that after his autobody shop was robbed, he was never without a firearm. Since the firearm used to shoot the victim was never recovered, the Commonwealth argues the discovery of another firearm logically tended to establish that Appellant discarded the one used to murder the victim and obtained another firearm in its place. Second, the Commonwealth claims that recovery of the firearm was admissible under *res gestae* principles to demonstrate the complete history of the police investigation into this homicide.

In our view, the trial court erred by failing to exclude the evidence of this firearm as irrelevant. The court admitted this evidence during Appellant's trial for murder and carrying *another* firearm without a license—the one used to shoot the victim.[2] The firearm found in Appellant's place of business had nothing to do with these charges and therefore was not probative in this prosecution. It also was pure speculation that the firearm in the body shop

_____

[2] As noted above, a separate trial took place for the charge of persons not to possess firearms.

was a replacement for the firearm used in this murder and therefore, was evidence of consciousness of guilt. Moreover, since this evidence was completely irrelevant, the Commonwealth also could not successfully argue that this evidence was necessary to establish the *res gestae* of the case. It was error to admit this evidence.

Nevertheless, admission of this evidence was harmless error. The harmless error doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial; an error is harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Lively*, 231 A.3d 1003, 1009 (Pa. Super. 2020). "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Commonwealth v. Hamlett*, 234 A.3d 486, 491 (Pa. 2020). "Harmless error is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Commonwealth v. Bullock*, 286 A.3d 1282, 1286 (Pa. Super. 2022).

The properly admitted evidence, particularly the surveillance video and eyewitness testimony, overwhelmingly established Appellant's guilt and

discredited his justification defense. By contrast, even though the evidence of the gun found in Appellant's autobody shop was irrelevant, the Commonwealth made clear that it was not the weapon used in the shooting. Therefore, its admission was so insignificant by comparison that it is clear beyond a reasonable doubt that its admission could not have contributed to the verdict. *See*, *e.g.*, *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 352 (1998) (in murder prosecution, where a 9 millimeter gun, a different gun found in defendant's home was irrelevant to case and should not have been admitted into evidence; nevertheless, error was harmless where other evidence against defendant was overwhelming and Commonwealth made clear that the gun found in his home was not used in commission of the crime).

Next, Appellant raises several challenges to the discretionary aspects of Appellant's sentence. Such challenges are not entitled to appellate review as a matter of right. *Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). Instead, they are considered petitions for allowance of appeal. *Id.* Thus, an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Id.*

Here, Appellant argues that the trial court abused its discretion when fashioning his sentence because (1) at his age (56), the sentence of 28½ to 57 years' imprisonment was a "de facto" life sentence, (2) the court failed to consider the protection of the public or Appellant's rehabilitative needs at sentencing; (3) the court imposed the statutory maximum sentence for each offense and made the sentences consecutive; and (4) the court failed to consider various mitigating factors. Appellant's Brief at 27-31. Construed together, Appellant's claims raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) ("an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question"). Moreover, Appellant satisfied the other three factors of the four-part jurisdictional test: he filed a timely notice of appeal, included a Rule 2119(f) statement of reasons for allowance of appeal in his brief, and raised these claims in a pre-sentence memorandum that the court reviewed prior to sentencing, N.T., 11/4/24, at 5, and in post-sentence motions.[3]

On the merits, however, we conclude that Appellant's objections to his sentence do not warrant relief. The record reflects that the court received a presentence investigation report and reviewed it prior to sentencing. N.T.,

---

[3] Arguably, Appellant waived his claim that his sentence was a "de facto life sentence" by failing to make this express claim at sentencing or in post-sentence motions. Nevertheless, we consider this claim to fit implicitly within the claims of excessiveness that he raised in his post-sentence motions.

11/4/ at 20. The law thus presumes that the court weighed all relevant information concerning Appellant's character and mitigating factors. ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020). In addition, as the court explained, it carefully weighed multiple factors in arriving at its sentence:

> In considering this sentence the Court considered the District Attorney's recommendation, the nature and seriousness of the violation, [Appellant]'s age, family, marital, employment status, the comments offered in behalf of [Appellant] by [Appellant]'s family and friends, psychological evaluation, sentencing memorandum, the presentence investigation. This was a senseless taking of Mr. Mallory's life without any justification because you were angry over a small debt. And you did it while you were on state parole for a robbery.

N.T., 11/4/24, at 20. Each of Appellant's sentences fell within the standard range of the Sentencing Guidelines then in effect.[4] Finally, we have stated that a defendant is not entitled to a shorter sentence simply because of his age. *See **Commonwealth v. P.B.B.***, 2020 WL 3225518, at *10 n.5 (Pa. Super. 2020) (unpublished memorandum) ("appellant is not entitled to a seasonal discount because he committed his crimes in the winter of his life"). For these reasons, we conclude that Appellant's sentence was a proper exercise of discretion.

_____

[4] As Appellant acknowledged, the Guidelines in effect at the time of Appellant's offenses prescribed a standard range sentence of 210-240 months' imprisonment for third-degree murder, 60 months' imprisonment for persons not to possess firearms, and 42 months' imprisonment for carrying firearms without a license. ***See*** Appellant's Sentencing Memorandum, 11/1/24, at 3-4. Appellant's sentences for each offense fit within these guidelines.

Finally, Appellant argues that the court failed to place the applicable sentencing guidelines on the record at the time of sentencing, leaving it unclear whether the court took into consideration the appropriate sentencing guidelines at the time of sentencing. We disagree. As stated above, Appellant's sentences for each offense fit within the standard Guidelines in effect at the time of his offenses. Thus, the court clearly took the proper Guidelines into account.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/13/2026